

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| vs. | § | Criminal Action No.: 3:05-00651-MGL-4 |
| | § | |
| ANTONIO CHERRY, | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO REDUCE HIS SENTENCE UNDER THE FIRST STEP ACT**

**I.     INTRODUCTION**

Pending before the Court is Defendant Antonio Cherry's (Cherry) motion to reduce his sentence under the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the First Step Act).  Having carefully considered the motion, the response, the supplemental briefing, the record, and the applicable law, it is the judgment of the Court Cherry's motion to reduce his sentence will be granted.

**II.     FACTUAL AND PROCEDURAL HISTORY**

Cherry pled guilty to conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).  On August 28, 2006, Judge Seymour sentenced him to 120 months incarceration, followed by five years of supervised release.

About one month later, a state court also sentenced Cherry to twenty years incarceration for an evidently unrelated conviction of first degree burglary; assault and battery with intent to

kill; and pointing and presenting a firearm. Although the state court judge ordered his sentence to run concurrently with the federal sentence previously imposed, because of the United States Marshals Service's practice of waiting to transfer a defendant in such circumstances until after his state sentence is complete, this effectively resulted in consecutive sentences. As a result, Cherry's current projected release date is October 4, 2030.

On September 6, 2016, Cherry moved, pro se, for his state and federal sentences to run concurrently. Judge Seymour denied the motion without prejudice, holding Cherry needed to seek relief from the Bureau of Prisons (BOP). It appears Cherry failed to do so.

The Clerk of Court docketed Cherry's pro se motion for appointment of counsel, which Judge Seymour granted. Counsel subsequently filed this motion to reduce his sentence under the First Step Act. Afterward, the Clerk's Officer reassigned this matter to the undersigned Judge. Thereafter, the government responded.

The Court ordered supplemental briefing addressing whether it could order that any amended sentence run concurrent to Cherry's previously-served state court sentence. Cherry and the government each filed a response. Subsequently, Cherry filed an additional reply.

The Court, having been fully briefed on the relevant issues, will now adjudicate the motion.

**III.     STANDARD OF REVIEW**

Under the First Step Act, the Court "may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the [g]overnment, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222. Section 2 of the Fair Sentencing Act reduces the sentencing disparity between powder and crack cocaine, and Section

2

3 eliminates mandatory minimum sentences for simple possession. Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372.

A covered offense "means a violation of a federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." First Step Act § 404(a), 132 Stat. at 5222.

Congress left the decision as to whether to grant a sentence reduction to the district court's discretion. *See id.* § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). In considering a motion under the First Step Act, however, the Court must recalculate the guideline range and consider the 18 U.S.C. § 3553(a) factors of sentencing. *United States v. Chambers*, 956 F.3d 667, 672, 674 (4th Cir. 2020). The Court may consider post-sentencing conduct in its evaluation the Section 3553(a) factors. *Id.* at 675.

### IV.     DISCUSSION AND ANALYSIS

#### A.     *Whether the Court should reduce Cherry's sentence*

The parties agree Cherry is eligible for a reduced guideline sentence of sixty months. Cherry asks for a reduction of his sentence to sixty months, and the government defers to the Court to determine the appropriate relief.

After the passage of the Fair Sentencing Act, the statutory penalties for Cherry's offense reduced from ten years to life to five years to twenty years. *See* Fair Step Act § 2, 124 Stat. at 2372 (amending the threshold cocaine base amounts triggering penalties under 21 U.S.C. § 841(b)(1)(A)). Therefore, inasmuch the statutory penalties for which Cherry was sentenced were

modified by section 2 or 3 of the Fair Sentencing Act of 2010, and Cherry's criminal conduct for which Judge Seymour sentenced was committed before August 3, 2010, his is a covered offense.

At the time of Cherry's original sentencing, the guideline was based on a total offense level of 29 and a criminal history category of III. As a result, Cherry's original guideline for imprisonment was 120 to 135 months. Absent the mandatory minimum, however, his guideline range would have been 108 to 135 months.

The Sentence Reduction Report (SRR) determined Cherry's new guideline should be based on a total offense level of 21. As a result, the recalculated guideline is sixty months. Absent the mandatory minimum, his guideline range would be forty-six to fifty-seven months. Neither the government nor Cherry objects to the SRR. The Court thus adopts the SRR and turns to the Section 3553(a) to determine if a reduction is appropriate.

The Section 3553(a) factors instruct the Court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) "the need for the sentence imposed—
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes by the defendant;
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the offense] . . .
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . [;]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The nature of conspiracy to distribute crack cocaine is certainly serious, but Congress has indicated that the law in effect at the time of his sentencing overstated the relative gravity of the offense. A reduced sentence would also avoid unwarranted sentencing disparities with others convicted more recently of the same offense.

Additionally, although Cherry has a criminal history score of three, he has served time for his prior offenses. Further, as noted in the presentence investigation report, Cherry grew up with an abusive father and a mother who suffered from a crack cocaine addiction. Cherry explained he turned to selling drugs out of financial necessity. Cherry also suffers from depression and was hospitalized prior to this case after attempting suicide. His history thus provides mitigating circumstances.

Finally, during his state sentence, Cherry had multiple disciplinary infractions, including possession of a contraband cell phone, public masturbation, making a threatening comment toward a prison employee, possession of alcohol, failure to obey orders, and failure to appear for work. Since his transfer to the Bureau of Prisons in June 2022, he has had no disciplinary infractions.

Although the Court is concerned by Cherry's behavior during his state sentence, the Court nevertheless determines the balance of the 3553(a) factors favors a sentence consistent with the current statutory requirements and sentencing guidelines for Cherry's offense. A five-year sentence is substantial and will serve the goals of sentencing. It will provide just punishment and promote respect for the law.

In sum, a reduction of Cherry's sentence to sixty months is sufficient, but no greater than necessary, in this case. For the same reasons, the Court also determines a reduced term of supervised release of four years, the bottom of the guideline range, will adequately serve the purposes of sentencing.

### B. Whether Cherry's reduced sentence should run concurrent to his previously-served state court sentence

Cherry initially argued the Court should recommend the BOP designate the South Carolina Department of Corrections (SCDC) for the service of his federal sentence *nunc pro tunc* from the date Cherry requested concurrent sentences. The government has no objection to such a recommendation. In his additional reply, Cherry asserts the sentences should run concurrently from the date the state court judge imposed his state sentence.

Because the First Step Act allows the Court to impose a new sentence, the Court determines it has authority to recommend that the sentences run concurrently. *See United States v. Collington*, 995 F.3d 347, 356 (4th Cir. 2021) (explaining First Step Act "proceedings result, potentially, in a new sentence"). Based on the lack of opposition by the government and the state court judge's intention that the sentences run concurrently, the Court holds such a recommendation is appropriate in this case and will serve to correct a procedural anomaly that has resulted in immense unfairness to Cherry.

Because more than sixty months have passed since Cherry requested concurrent sentences, both Cherry's initial proposed recommendation and the proposed recommendation in his additional reply should result in his release from the BOP. Accordingly, the Court will use the date Cherry requested concurrent sentences.

### V. CONCLUSION

For the reasons stated above, it is the judgment of the Court Cherry's motion to reduce his sentence is **GRANTED**. Specifically, Cherry's sentence is reduced to a term of imprisonment of sixty months, followed by four years of supervised release. The Court will also add the following recommendation to the judgment:

The Court strongly recommends the BOP designate *nunc pro tunc* the state institution, the South Carolina Department of Corrections, for the service of this federal sentence from September 6, 2016, through the present. Such a designation would be consistent with the intent of the presiding state court judge, who ordered Cherry's state and federal sentences to run concurrently, and with BOP Program Statement 5160.05, at https://www.bop.gov/policy/progstat/5160_005.pdf. It is the Court's intention that such a designation should result in Cherry's time having been served and his release from the BOP.

All other terms of the original judgment will remain the same.

**IT IS SO ORDERED.**

Signed this 21st day of December 2022, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE